OPINION
Appellant, Carol Gillian, and appellee, Ronald Gillian, were married on July 21, 1991. No children were born as issue of said marriage. On January 3, 1997, appellant filed a complaint for divorce.
A hearing before the court was held on February 24, 1998. By judgment entry decree of divorce filed March 11, 1998, the trial court granted the divorce and divided the parties' property.
Appellant filed a notice of appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT DETERMINED 1) THAT THE BEAR STERNS ACCOUNT WAS DEFENDANT'S SEPARATE PROPERTY, 2) THAT ONLY $76,857.00 OF THE MERRILL LYNCH SECURITIES WAS MARITAL PROPERTY, AND 3) THAT PLAINTIFF'S ENTIRE STATE TEACHERS RETIREMENT SERVICE (STRS) BENEFIT WAS MARITAL PROPERTY, AS SUCH DETERMINATIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT FAILED TO DIVIDE ALL OF THE ASSETS; NAMELY, FOUR CHECKING ACCOUNTS IDENTIFIED AS ITEMS ONE THROUGH FOUR ON THE PARTIES' STIPULATED INVENTORY OF ASSETS AND LIABILITIES, PLAINTIFF'S EXHIBIT 25.
 III THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT AWARDED NEARLY TWO-THIRDS OF THE ERRONEOUSLY DETERMINED "MARITAL PROPERTY" TO THE DEFENDANT AND ALLOCATED ALL OF THE MARITAL DEBTS TO THE PLAINTIFF. THE TRIAL COURT FURTHER ERRED WHEN IT FAILED TO SUPPORT ITS DECISION WITH SUFFICIENT FINDINGS OF FACT.
 I
Appellant claims the trial court erred in determining separate and marital property. Specifically, appellant claims the trial court erred in finding the Bear Sterns account to be appellee's separate property, and only $76,857.00 of the Merrill Lynch securities and appellant's entire State Teachers Retirement Service benefits (hereinafter "STRS") to be marital property. We agree.
R.C. 3105.17.1(B) authorizes the trial court to determine "what constitutes marital property and what constitutes separate property." Subsection (A)(3)(a) defines "marital property" as follows:
 (i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 (ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 (iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;
 (iv) A participant account, as defined in section 145.71
of the Revised Code, * * *.
"Separate property" as defined in subsection (A)(6)(a) "means all real and personal property and any interest in real or personal property that is * * * acquired by one spouse prior to the date of the marriage" and "[p]assive income and appreciation acquired from separate property by one spouse during the marriage." "Passive income" is defined in subsection (A)(4) as "income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse."
This court will not disturb a trial court's decision absent a showing of an abuse of discretion. Martin v. Martin (1985),18 Ohio St.3d 292. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. In addition, a judgment supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279.
 BEARS STERNS ACCOUNT
As evidenced by Plaintiff's Exhibit 8, appellee maintained an investment account with Bear, Sterns Co., Inc. with a value of $96,890.00. By judgment entry filed March 11, 1998, the trial court found the Bear Sterns account to be appellee's premarital property and awarded appellee "Exhibit 8, Bear Sterns Securities in the full amount."
Appellant argues the money used to invest in the Bear Sterns account was earned income during the marriage and therefore the account should have been deemed marital property. Appellee argues the investment money originated from monies he had held in a checking account prior to the marriage and therefore the account was properly deemed his separate property. In order to claim the Bear Sterns account as separate property, appellee has the burden of proof, by a preponderance of the evidence, to trace the account to his separate property. Peck v. Peck (1994), 96 Ohio App.3d 731.
The parties married in 1991. At the time of the marriage, appellee held a TransOhio checking account with a balance of $18,969.00. T. at 120. Appellee's paychecks earned during the marriage were directly deposited into this checking account. T. at 162, 163. In 1993, two years after the marriage, appellee opened the Bear Sterns account. T. at 119. Appellee testified the money used to invest in this account ($10,938.13) came from the premarital monies in the checking account. T. at 120. Appellee testified he continued investing in the Bear Sterns account with monies from the premarital portion of the checking account and proceeds from the sale of securities. T. at 120-124. On cross-examination, appellee admitted he could not dispute the fact his premarital monies in the checking account had been commingled with his earned income during the marriage. T. at 164. Appellee also admitted $13,386.00 of the Bear Sterns account was marital property. T. at 161-162.
Appellee's expert, Scott Whetstone, C.P.A., testified to a "relationship" between the premarital checking account money and the Bear Sterns account, but admitted he could not identify the investment money as premarital. T. at 180, 183.
Upon review, we find appellee failed in his burden. Appellee's earned income was commingled with his premarital monies in his checking account. This checking account was used for marital expenses and investments. Appellee admitted a portion of the Bear Sterns account was marital property. The trial court erred in awarding the Bear Sterns account to appellee as his separate property.
 Merrill Lynch Securities
As evidenced by Plaintiff's Exhibit 7, appellee maintained an investment account with Merrill Lynch with a value of $196,407.00. By judgment entry filed March 11, 1998, the trial court found the Merrill Lynch securities to be appellee's premarital property and awarded appellee "Exhibit 7, Merrill Lynch Securities, to the extent of $115,466.00." $76,857.00 was deemed marital property and was awarded to appellee.
Appellant extends the Bear Sterns account arguments to these securities. Appellee argues the trial court accepted the figures from Plaintiff's Exhibit 25 and now appellant is "asking this Court to disregard Appellant's own evidence." See, Appellee's Brief at 10-11. As previously stated, appellee bears the burden of proof to trace the securities to his separate property. Peck.
Unlike the Bear Sterns account, appellee opened the Merrill Lynch account in 1985, six years prior to the marriage. T. at 108, 110. Appellee testified to several premarital stock purchases. T. at 111-118. Appellee admitted a marital investment of $10,419.93 in the purchase of China Light and Power stock. T. at 156. This stock was purchased on August 31, 1994. See, Defendant's Exhibit D. Appellee stated this stock was traced to a final growth rate of $22,755.00. T. at 155-157. Appellant took this figure and claimed the growth of the stock from July 1, 1991 (time of marriage) to February 17, 1998 would be $76,857.00, the figure listed in her Exhibit 25. Appellant used appellee's $22,755.00 figure but at trial disputed the marital amount of the Merrill Lynch securities. T. at 20.
Mr. Whetstone traced the purchase of the stocks. T. at 174-177. Mr. Whetstone opined "the stocks that were held and equities that were held at the date of the marriage that were still held as of today can be traced as pre-marital assets." T. at 178. Mr. Whetstone further opined any activity after the marriage bore a relationship to the premarital assets. T. at 178-179. However, Mr. Whetstone did exclude three stocks in addition to the China Light and Power stock. The stocks were 500 shares of GBI, 200 shares of MRK and 300 shares of RPCX for a total purchase value of $19,558.54. See, Defendant's Exhibits D and E. These stocks were purchased after the marriage with monies in appellee's Merrill Lynch ready asset account. This account was funded with money from outside sources that could not be traced. T. at 191. Mr. Whetstone opined because these stocks had been purchased after the marriage with unidentifiable monies from the ready asset account, these stocks could not be traced to premarital assets. T. at 183-185, 193-195. The purchase value of the three stocks, $19,558.54, plus the purchase value of the China Light and Power stock, $10,419.93, equals $29,978.47.
It is unclear from the trial court's March 11, 1998 judgment entry why the trial court accepted the figures listed in Plaintiff's Exhibit 25. The marital figure ($76,857.00) purports to be the growth valuation of the China Light and Power stock only. No mention is made as to the three other stocks. Testimony established the tracing of the China Power and Light stock to a growth value of $22,755.00. Appellant took this figure to calculate the stock's growth from July 1, 1991 however, the stock was not even purchased until August 31, 1994.
Upon review, we find the trial court erred in accepting the figures in Plaintiff's Exhibit 25. The total amount of the purchase value of the marital portion of the Merrill Lynch securities is $29,978.47. The growth value is undetermined.
 STRS BENEFITS
As evidenced by Defendant's Exhibit O, the present value of appellant's pension is $185,070.01. Appellee's expert, Pension Evaluators, determined "[b]ecause part of the pension was earned outside the marriage, the amount subject to equitable distribution is reduced to $93,813.09." By judgment entry filed March 11, 1998, the trial court found appellant's pension to be marital property and stated "Plaintiff shall receive Exhibit 9, State Teachers Retirement System Benefits." Plaintiff's Exhibit 9 was a preliminary report prepared by Pension Evaluators wherein the present value of appellant's pension was listed as $143,778.74 and the amount available for equitable distribution was listed as $72,882.30.
It is unclear what figure the trial court accessed to appellant. Did the trial court access the $143,778.74 amount or the $72,882.30 amount? What about the updated figures in Defendant's Exhibit O? Upon review, we find the trial court erred in distributing appellant's pension benefits.
Assignment of Error I is granted.
 II
Appellant claims the trial court erred in failing to divide four checking accounts. We agree.
By judgment entry filed February 25, 1998, the trial court noted "parties stipulated that plaintiff's Exhibit 25 accurately reflects the listing of assets and liabilities in dispute." Plaintiff's Exhibit 25 lists four checking accounts as evidenced by Plaintiff's Exhibits 1 through 4. These accounts are not mentioned in the division of property. R.C. 3105.17.1(B) mandates "the court shall divide the marital and separate property equitably between the spouses." Absent any specific findings on the accounts, we are unable to determine if the trial court considered them in the distribution.
Upon review, we find the trial court erred in failing to divide the four checking accounts.
Assignment of Error II is granted.
 III
Appellant claims the trial court erred in awarding two-thirds of the marital property to appellee and allocating all the marital debt to appellant. We agree.
R.C. 3105.17.1(C) mandates "the division of marital property shall be equal." If such a division would be inequitable, the trial court shall divide the marital property in an equitable manner. Subsection (G) requires the trial court to "make written findings of fact that support the determination that the marital property has been equitably divided * * *."
As stated in Assignment of Error I, this court will not disturb the trial court's decision absent a showing of an abuse of discretion. Martin; Blakemore.
Naturally, in light of our decisions in the previous two assignments of error, this assignment is moot given the fact the division of property must be redone. However, we note the trial court's March 11, 1998 judgment entry is unclear as to whether the trial court intended to divide the parties' property equally or equitably. Following the trial court's awards, it appears the trial court did not divide the property equally. Therefore, the trial court was required to make written findings of fact to support an equitable division. Such findings were not done subjudice. In addition, the trial court failed to explain its allocation of the marital debt to appellant.
Assignment of Error III is granted.
The judgment of the Court of Common Pleas of Stark County, Ohio, Domestic Relations Division is hereby reversed.
By Farmer, J., Gwin, P.J. and Hoffman, J. concur.
______________________________
______________________________
 ______________________________ JUDGES
SGF/jp 0216
JUDGMENT ENTRY
CASE NO. 1998CA00094
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, Domestic Relations Division is reversed and remanded to said court to redo the division of property in accordance with the opinion filed herein.
______________________________
______________________________
 ______________________________ JUDGES